IN THE COURT OF COMMON PLEAS
FOR HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHERYL OETERS<br>10050 Flora Road<br>Harrison, Ohio 45030 | )<br>)<br>) | CASE NO. |
| Plaintiff, | )<br>) | JUDGE: |
| v. | )<br>)<br>) | |
| MOUNT HEALTHY PREPARATORY AND<br>FITNESS ACADEMY<br>7601 Harrison Avenue<br>Cincinnati, Ohio 45231 | )<br>)<br>)<br>)<br>) | **COMPLAINT FOR<br>DAMAGES AND<br>INJUNCTIVE RELIEF** |
| Serve also:<br>MOUNT HEALTHY<br>PREPARATORY AND<br>FITNESS ACADEMY<br>c/o Amy Borman<br>(Statutory Agent)<br>150 East Gay Street, 24th Floor<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| -and- | ) | |
| CATHY BEAN, Principal<br>c/o Mount Healthy Preparatory and Fitness<br>Academy<br>7301 Harrison Avenue<br>Cincinnati, Ohio 45231 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

Plaintiff Cheryl Oeters by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Oeters is a resident of the city of Harrison, Hamilton County, Ohio.

2. Defendant Mount Healthy Preparatory and Fitness Academy, ("Mount Healthy") is a domestic-incorporated, non-profit company that conduct business throughout the state of

Ohio. The relevant location of the events and omissions of this Complaint took place was 7601 Harrison Avenue, Cincinnati, Ohio 45231.

3. Mount Healthy is, and was at all times hereinafter mentioned, Oeters' employer within the meaning of the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e, O.R.C. § 3707.26, O.R.C. § 4112.71, and O.R.C. § 4112.02 *et seq*.

4. Upon information and belief, Defendant Cathy Bean is a resident of Ohio.

5. At all times referenced herein, Defendant Bean was an owner, manager, supervisor, and/or agent of Mount Healthy, and as such, Oeters' employer within the meaning of the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e, R.C. § 4101.11, and O.R.C. § 4112.02(J).

6. Within 300 days of the adverse employment actions described herein, Oeters filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-01140 ("EEOC Charge").

7. On January 5, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Oeters regarding the EEOC Charge.

8. Oeters received the Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which is attached hereto as Plaintiff's Exhibit 1.

9. Oeters has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

10. Oeters had properly exhausted all administrative remedies pursuant to O.R.C. § 4112.051.

## JURISDICTION & VENUE

11. The material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

12. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1), (2), and/or (3).

13. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3), and/or (6).

14. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

15. Oeters is a former employee of Mount Healthy.

16. At all times noted herein, Oeters was qualified for her position with Mount Healthy.

17. At all times noted herein, Oeters could fully perform the essential functions of her job, with or without a reasonable accommodation.

18. Oeters worked for Mount Healthy as a Teacher from January 4, 2020, until Mount Healthy wrongfully terminated Oeters' employment on or about August 27, 2020.

19. Oeters is a Caucasian woman and is therefore in a protected class for her race and gender.

20. Further, Oeters suffers from anxiety, depression, PTSD, and bipolar disorder; therefore, she is also in a protected class for her disabilities.

21. In or around January 2020, Oeters was aggressively accosted by five (5) angry students that made her fear for her safety. This was not the first incident for Oeters involving dangerous students at Mount Healthy.

22. After this incident, Oeters disclosed her disabilities to Mount Healthy Principal, Defendant Bean.

23. This report imputed notice onto Mount Healthy of Oeters' disabilities.

24. Despite this disclosure, Oeters continued to experience similar incidents where students would threaten her with verbal abuse and physical violence.

25. Once, Oeters was physically struck by a student.

26. The student, after striking Oeters, was returned to class shortly after without immediate reprimand.

27. It was not until after Oeters had a meeting with Bean, the student, and the student's parent was the student disciplined for the violence. Oeters made several protected complaints related to her and her colleagues' safety in the school, and how these threats against her were triggering her disabilities.

28. Despite her protected complaints, Bean continued to place the most violent, aggressive students in Oeters' class.

29. Oeters told Bean that she was worried about the students harming her or others in the future. This was yet another protected complaint of workplace safety.

30. In response, Bean told Oeters to "get over it" because as a charter school, Mount Healthy would not suspend kids unless absolutely necessary for fear of losing funding.

31. To reiterate, Mount Healthy prioritized school funding over staff safety concerns.

32. In or around early August 2020, Oeters complained to Bean about safety issues concerning the cleanliness of Mount Healthy.

33. Bean completely disregarded Oeters' protected complaint and berated her in front of her colleagues for making an issue of safety and sanitation.

34. Undaunted by Bean's cavalier attitude towards roaches and unsafe conditions, Oeters reported the safety and sanitation issues to the Board of Health pursuant to O.R.C. § 3707.26; another protected safety complaint. She received no useful response.

4

E-FILED 04/04/2022 09:28 AM / CONFIRMATION 1174909 / A 2201171 / COMMON PLEAS DIVISION / IFIJ

35. In or around August 2020, Oeters overheard a student in her class loudly telling other students "fun facts" during instructional time.

36. In reality, the student wasn't entertaining their peers with facts but rather making inappropriate comments about eating babies, hurting animals, and learning about bugs that would burrow in your skin and eat you from the inside out.

37. Oeters noted that these comments were making other students visibly upset and uncomfortable, so she tried to intervene.

38. The disruptive student was very upset by Oeters' intervention and reported her to Bean both verbally and in writing.

39. Bean asked Oeters to contact the disruptive students' parents and "get ahead of this."

40. Bean had previously commended African American teachers for yelling, belittling, threatening, or otherwise being both physically and verbally aggressive with students.

41. Oeters observed many instances where the African American teachers at Mount Healthy were permitted to employ more aggressive teaching styles and techniques with students, but Caucasian employees were not.

42. Bean would complement the African American teachers for yelling at students, and once told Caucasian teacher Alicia Clayton that she should "watch a Black teacher" to learn how to control her students.

43. Beyond teaching styles, Oeters also noticed that Mount Healthy, by and through Bean, was more likely to reprimand and fire Caucasian teachers for lesser offenses than African American teachers.

44. For example, Bean and African American teacher Martin Ware once got into a heated argument in the hallway crowded with other students and teachers.

45. Ware was so upset that he punched a hole in the wall and stormed away from Bean.

46. To the best of Oeters' knowledge and belief, Ware was neither disciplined nor terminated for his conduct, and Bean simply had the hole in the wall fixed.

47. Disparately, Oeters knew about an argument between Bean and Caucasian teacher Bobbi Lanham.

48. This argument was behind closed doors in Bean's office, away from students, and did not involve any acts of violence; however, Bean terminated Lanham's employment immediately after the argument for insubordination.

49. It was clear to Oeters that the Caucasian employees received disparate treatment from Mount Healthy.

50. Confused by the disparate expectations but not wanting to appear insubordinate, Oeters complied with Bean's instructions and contacted the disruptive student's parents on or around August 20, 2020.

51. On or around August 21, 2020, Bean called Oeters into a meeting and told her that the disruptive students' parents had contacted the school.

52. Bean told Oeters that she understood Oeters was not calling the student a serial killer, but that the students' parents were angry.

53. Bean told Oeters that the Board was opening an investigation into the incident.

54. Oeters understood that neither Bean nor the Board were going to support her and became extremely anxious about the potential for losing her job.

55. The anxiety that resulted from the Board's investigation against Oeters triggered her disabilities so severely that she began vomiting uncontrollably and left work early.

6

56. Oeters was later admitted to the hospital on or around August 23, 2020, due to her disabilities.

57. While Oeters was in the hospital, she received a call and multiple emails from Bean, Byran Wagoner, and Myrrah Satow, who asked Oeters when she would return to work. The investigation was not mentioned.

58. Oeters (and her mother and husband) told Bean, Wagoner, and Satow that she was still in the hospital but planned on returning to work as soon as possible.

59. On or around August 25, 2020, Oeters received a call from Mount Healthy teacher Julie Vanover.

60. Vanover told Oeters that Vanover's employment was being terminateddue to her health issues, and that she heard Oeters was also getting terminated.

61. Further, Vanover told Oeters that Bean suspected either Vanover or Oeters contacted the Board of Health on Mount Healthy to report safety and sanitary issues, and that they were both getting fired in retaliation for the report.

62. At this point Oeters believed she was still employed at Mount Healthy and this news sent Oeters into a downward spiral, retriggered her mental health issues, and caused her to relapse.

63. Oeters' doctor ordered Oeters to send her phone home with her family members to prevent her from getting any further stressful news from Mount Healthy.

64. Oeters' mother and husband began calling off work for Oeters.

65. On or around August 27, 2020, Mount Healthy told Oeters' family that her employment was being terminated for the comment to the disruptive student and other reasons.

66. Oeters' termination was an adverse employment action against her.

67. Defendants' purported reason(s) for Oeters' termination was pretext.

68. Defendants replaced Oeters with someone outside her protected class.

69. Subsequent to her termination, Mount Healthy contacted the Ohio Department of Education and provided false information about Oeters that prevented her from obtaining a new job. This was post-employment retaliation against Oeters.

70. As a result of the above, Plaintiff has suffered and will continue to suffer damages.

### COUNT I: DISABILITIES DISCRIMINATION IN VIOLATION OF R.C. § 4112.02 *et seq.* (Defendant Mount Healthy Only)

71. Oeters restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

72. Oeters has depression, anxiety, PTSD, and bipolar disorder; therefore, she is in a protected class for her disabilities.

73. In the alternative, Mount Healthy perceived Oeters as being disabled.

74. In the alternative, Oeters had records of mental and/or physical impairment.

75. Oeters' condition constituted a physical impairment.

76. Oeters' condition substantially impaired one or more of her major life activities including working.

77. Alternatively, Mount Healthy perceived Oeters' condition to substantially impair one or more of her major life activities including working.

78. R.C. § 4112.02 *et seq.*, provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

79. Mount Healthy treated Oeters differently than other similarly situated employees based upon her disabilities.

8

80. Alternatively, Mount Healthy treated Oeters differently than other similarly situated employees based upon her perceived disabling condition.

81. On or around August 27, 2020, Mount Healthy terminated Oeters' employment without just cause.

82. Mount Healthy's termination of Oeters' employment was an adverse employment action against her.

83. Mount Healthy's purported reason(s) for Oeters' employment termination was pretextual.

84. Mount Healthy actually terminated Oeters' employment due to her disabilities.

85. Alternatively, Mount Healthy's actually terminated Oeters' employment due to her perceived disabling condition.

86. Mount Healthy violated R.C. §4112.02 *et seq.*, by terminating Oeters' employment because of her disabilities.

87. Alternatively, violated R.C. §4112.02 *et seq.*, by terminating Oeters' employment because of her disabling condition.

88. Mount Healthy violated R.C. § 4112.02 *et seq.*, by treating Oeters' differently from other similarly situated employees outside her protected class.

89. Mount Healthy violated R.C. § 4112.02 *et seq.*, by applying its employment policies in a disparate manner based on Oeters' disabilities.

90. Alternatively, Mount Healthy violated R.C. § 4112.02 *et seq.*, by applying its employment policies in a disparate manner based on Oeters' disabling condition.

91. Mount Healthy violated R.C. § 4112.02 *et seq.*, by applying its disciplinary policies in a disparate manner based on Oeters' disabilities.

92. Alternatively, Mount Healthy violated R.C. § 4112.02 *et seq.*, by applying its disciplinary policies in a disparate manner based on Oeters' perceived disabling condition.

93. Oeters' incurred severe emotional distress damages as a result of Mount Healthy's conduct described herein.

94. As a direct and proximate result of Mount Healthy's acts and omissions, Oeters has suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (Defendant Mount Healthy Only)

95. Oeters restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

96. Oeters has depression, anxiety, PTSD, and bipolar disorder; therefore, she is in a protected class for her disabilities.

97. In the alternative, Mount Healthy perceived Oeters as being disabled.

98. In the alternative, Oeters had records of mental and/or physical impairment.

99. Oeters' condition constituted a physical impairment.

100. Oeters' condition substantially impaired one or more of her major life activities including working.

101. Alternatively, Mount Healthy perceived Oeters' condition to substantially impair one or more of her major life activities including working.

102. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

103. Mount Healthy treated Oeters differently than other similarly situated employees based upon her disabilities.

10

104. Alternatively, Mount Healthy treated Oeters differently than other similarly situated employees based upon her perceived disabling condition.

105. On or around August 27, 2020, Mount Healthy terminated Oeters' employment without just cause.

106. Mount Healthy's termination of Oeters' employment was an adverse employment action against her.

107. Mount Healthy's purported reason(s) for Oeters' employment termination was pretextual.

108. Mount Healthy actually terminated Oeters' employment due to her disabilities.

109. Alternatively, Mount Healthy's actually terminated Oeters' employment due to her perceived disabling condition.

110. Mount Healthy violated the ADA by terminating Oeters' employment because of her disabilities.

111. Alternatively, violated the ADA by terminating Oeters' employment because of her disabling condition.

112. Mount Healthy violated the ADA by treating Oeters' differently from other similarly situated employees outside her protected class.

113. Mount Healthy violated the ADA by applying its employment policies in a disparate manner based on Oeters' disabilities.

114. Alternatively, Mount Healthy violated the ADA by applying its employment policies in a disparate manner based on Oeters' disabling condition.

115. Mount Healthy violated the ADA by applying its disciplinary policies in a disparate manner based on Oeters' disabilities.

116. Alternatively, Mount Healthy violated the ADA by applying its disciplinary policies in a disparate manner based on Oeters' perceived disabling condition.

117. Oeters' incurred severe emotional distress damages as a result of Mount Healthy's conduct described herein.

118. As a direct and proximate result of Mount Healthy's acts and omissions, Oeters has suffered and will continue to suffer damages.

### COUNT III: REVERSE RACE DISCRIMINATION IN VIOLATION OF R.C. 4112.02 *et seq.* (Defendant Mount Healthy Only)

119. Oeters restates each and every prior paragraph of this complaint, as if it were fully restated herein.

120. Oeters is Caucasian, and thus in a protected class for her race.

121. Mount Healthy is a unique employer in that it discriminates against the majority.

122. R.C. § 4112.02 *et seq.*, provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

123. Mount Healthy treated Oeters differently than other similarly situated employees based upon her race.

124. Namely, African American teachers were permitted to use more aggressive teaching techniques with their students.

125. Disparately, when Oeters tried to intervene with a student using more aggressive teaching techniques, she was investigated by the Mount Healthy Board and fired.

126. Mount Healthy unlawfully treated its African American employees more favorably than its Caucasian employees.

127. Mount Healthy's termination of Oeters was an adverse employment action against her.

128. Mount Healthy's purported reason(s) for Oeters' employment termination was pretextual.

129. Mount Healthy actually terminated Oeters' employment due to her race.

130. Mount Healthy violated R.C. § 4112.02 *et seq.*, by terminating Oeters' employment because of her race.

131. Mount Healthy violated R.C. § 4112.02 *et seq.*, by treating Oeters; differently from other similarly situated employees outside her protected class.

132. Mount Healthy violated R.C. § 4112.02 *et seq.*, by applying its employment policies in a disparate manner based on Oeters' race.

133. Mount Healthy violated R.C. § 4112.02 *et seq.*, by applying its disciplinary policies in a disparate manner based on Oeters' race.

134. Oeters' incurred severe emotional distress damages as a result of Mount Healthy's conduct described herein.

135. As a direct and proximate result of Mount Healthy's acts and omissions, Oeters has suffered and will continue to suffer damages.

## COUNT IV: REVERSE RACE DISCRIMINATION IN VIOLATION OF Title VII
### (Defendant Mount Healthy Only)

136. Oeters restates each and every prior paragraph of this complaint, as if it were fully restated herein.

137. Oeters is Caucasian, and thus in a protected class for her race.

138. Mount Healthy is a unique employer in that it discriminates against the majority.

139. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

140. Mount Healthy treated Oeters differently than other similarly situated employees based upon her race.

141. Namely, African American teachers were permitted to use more aggressive teaching techniques with their students.

142. Disparately, when Oeters tried to intervene with a student using more aggressive teaching techniques, she was investigated by the Mount Healthy Board and fired.

143. Mount Healthy unlawfully treated its African American employees more favorably than its Caucasian employees.

144. Mount Healthy's termination of Oeters was an adverse employment action against her.

145. Mount Healthy's purported reason(s) for Oeters' employment termination was pretextual.

146. Mount Healthy actually terminated Oeters' employment due to her race.

147. Mount Healthy violated Title VII by terminating Oeters' employment because of her race.

148. Mount Healthy violated Title VII by treating Oeters; differently from other similarly situated employees outside her protected class.

149. Mount Healthy violated Title VII by applying its employment policies in a disparate manner based on Oeters' race.

150. Mount Healthy violated Title VII by applying its disciplinary policies in a disparate manner based on Oeters' race.

151. Oeters' incurred severe emotional distress damages as a result of Mount Healthy's conduct described herein.

152. As a direct and proximate result of Mount Healthy's acts and omissions, Oeters has suffered and will continue to suffer damages.

## COUNT V: RETALIATION

153. Oeters restates each and every prior paragraph of this complaint, as if it were fully restated herein.

154. During her employment, Oeters made several protected complaints of safety concerns she had concerning the students threatening her, scaring her, and at times physically striking her.

155. Soon after making her protected complaints, Mount Healthy took adverse employment actions against Oeters including, but not limited to, terminating her employment and reporting her illegitimately to the Ohio Department of Education.

156. The temporal proximity between Oeters' complaints and the adverse employment actions taken against her implies that she was fired in retaliation for making her protected complaints.

157. Mount Healthy's actions were retaliatory in nature based on Oeters' opposition to the unlawful discriminatory conduct.

158. Pursuant to R.C. §4112.02 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

159. Oeters' incurred severe emotional distress damages as a result of Mount Healthy's conduct described herein.

160. As a direct and proximate result of Mount Healthy's acts and omissions, Oeters has suffered and will continue to suffer damages.

## COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

161. Oeters restates each and every prior paragraph of this complaint, as if it were fully restated herein.

162. As stated above, Oeters made protected complaints to the Ohio Health Department concerning safety and sanitation issues at Mount Healthy including, but not limited to, unsafe conditions, bodily waste dripping through the floor from a restroom into a classroom, moldy refrigerators, lack of soap and other cleaning materials, and roaches.

163. Soon after making this protected complaint, Oeters got a call from Vanover who said that Oeters might be getting fired soon because Bean suspected she called the Ohio Health Department to file that complaint.

164. Subsequent to Vanover's warning, Oeters' employment was terminated.

165. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because she engages in protected activity under Ohio law.

166. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

167. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94

16

Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

168. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

169. Mount Healthy's terminating of Oeters jeopardizes these public policies.

170. Mount Healthy's termination of Oeters was motivated by conduct related to these public policies.

171. Mount Healthy had no overriding business justification for terminating Oeters.

172. Oeters' incurred severe emotional distress damages as a result of Mount Healthy's conduct described herein.

173. As a direct and proximate result of Mount Healthy's acts and omissions, Oeters has suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Oeters demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

17

E-FILED 04/04/2022 09:28 AM / CONFIRMATION 1174909 / A 2201171 / COMMON PLEAS DIVISION / IFIJ

    iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Oeters' personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Oeters for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Oeters' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
    Trial Attorney
Brianna R. Carden (0097961)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Cheryl Oeters*

## JURY DEMAND

Plaintiff Cheryl Oeters demands a trial by jury by the maximum number of jurors permitted.

/s/ Evan R. McFarland
Evan R. McFarland (0096953)